**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CARLOS PRIMO, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**BENIHANA NATIONAL CORP., HARU HOLDING CORP., HARU GRAMERCY PARK CORP., and HARU THIRD AVE. CORP.**<br><br><br>**Defendants.** | **CLASS ACTION COMPLAINT**<br><br>Case No: |

Plaintiff, Carlos Primo (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover minimum wages, overtime wages, misappropriated tips, call-in pay and other damages for Plaintiff and his similarly situated employees – servers, bussers, runners, bartenders and other "Tipped Employees" – who work or have worked at the Haru restaurants located at 220 Park Ave. South, New York, NY 10003 ("Gramercy Haru") and 1329 3rd Ave., New York, NY 10011 ("Third Ave. Haru").

2.      Owned and/or operated by Benihana National Corp., Haru Holding Corp., Haru Gramercy Park Corp., and Haru Third Ave. Corp. (collectively "Defendants"), the Gramercy

Haru and Third Ave. Haru restaurants are part of a chain of six acclaimed sushi restaurants in New York.

3.      In 1996, Haru opened its first restaurant on Amsterdam Avenue in New York, New York.[1] In 1999, Defendant Benihana National Corp., an international restaurant corporation with 77 restaurants in the US and worldwide, completed its acquisition of the Haru Sushi restaurants.[2]

4.      Defendants have been part of a single integrated enterprise that has jointly employed Tipped Employees at the Gramercy Haru[3] and Third Ave. Haru restaurants.

5.      The Haru Restaurants are linked together through a centralized website, http://harusushi.com/, which provides links to all of the Haru Restaurants, including both the Gramercy Haru and Third Ave. Haru.  The website also allows users to access menus, purchase gift cards, apply for open positions with the restaurant, and book events and reservations at any of the restaurants in the group.

6.      At all times relevant, Defendants have paid Plaintiff at a "tipped" minimum wage rate – less than the full minimum wage rate for non-tipped employees.

7.      Defendants, however, have not satisfied the strict requirements under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") that would allow them to pay this reduced minimum wage (*i.e.* take a "tip credit").

8.      Specifically, Defendants require Plaintiff and other Tipped Employees to engage in a tip distribution scheme wherein they must share a daily portion of their total tips with sushi chefs at the Gramercy Haru and Third Ave. Haru restaurants.

---

[1]      *See* Haru Careers (*available at* https://harusushi.jobs/, *last accessed* November 28, 2017)
[2]      *See* Benihana Corporate Information (*available at* https://www.benihana.com/about/corporate-information/, *last accessed* November 28, 2017)
[3]      The Gramercy Haru restaurant closed in or around August 2017.

9.      Individuals employed as sushi chefs are responsible for preparing and rolling sushi.  In that regard, sushi chefs do not wait on customers, take customer orders, or deliver food or beverages to customers. Rather, customers are greeted and seated by hosts, orders are taken by servers, and food prepared by sushi chefs are delivered by runners. Sushi chefs do not perform personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental. As a result, sushi chefs are not entitled to share tips under the FLSA or the NYLL. *See e.g.*, *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 132 (S.D.N.Y. 2014) (denying defendants' motion for summary judgment where plaintiffs maintained that sushi chefs did not take customer orders, had no contact with customers, and did not serve customers seated at the sushi bar); *see also Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1363 (S.D. Fla. 2009) (same); *Mackereth v. Kooma, Inc.*, No.14 Civ. 04824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015) (denying motion to dismiss where plaintiffs alleged a requirement to share tips with sushi chefs).

10.      Tipped Employees are required to perform side work at the start, during, and the end of every shift.

11.      As a result, Tipped Employees spend more than 20% of their work time and/or in excess of two hours engaged in side work duties.

12.      The duties that Defendants required Tipped Employees to perform are duties customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

13.      The side work that Defendants require Tipped Employees to perform include, but is not limited to:  (1) cleaning bathrooms; (2) sweeping; (3) mopping; (4) setting up and taking out garbage cans; (5) washing, cleaning and filling soy sauce containers; (6) putting various

sauces into squeeze bottles; (7) cleaning the POS station; (8) setting up garnishes; (9) filling large quantities of bowls with scallions and tofu; (10) folding napkins; (11) setting up and breaking down soda machine; (12) restocking and polishing glassware; (13) filling ice; (14) setting up and breaking down the patio; and (15) wrapping up and moving food such as tofu and seaweed to refrigerators.

14.     The side work that Defendants require of Tipped Employees is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.  Furthermore, Defendants require Tipped Employees to perform most side work before the restaurant opened or after the restaurant closed and customers had left.  As means of example, opening Tipped Employees are required to arrive at approximately 10:30 a.m. for a lunch shift when the restaurants do not open until 11:30 a.m.[4]  Defendants also require Tipped Employees to remain at the restaurant after customers leave to perform closing side work.

15.     As some of these duties are not related to Plaintiff's duties as a Tipped Employee, Plaintiff and similarly situated Tipped Employees were engaged in dual occupations for which they are entitled to the full minimum wage.

16.     In fact, Defendants' own job description for tipped positions identifies that Tipped Employees will be required to "[c]omplete opening and closing checklists" and maintain "clean and stocked service and dining areas"[5]

17.     Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments. Despite this, Tipped Employees are not required to record the amount of time they spend performing side work.

---

[4] *See e.g.*, Haru Third Ave. Hours (*available at* http://harusushi.com/location/newyork_thirdave/, *last accessed* November 28, 2017)
[5] *See e.g.*, Haru Server Job Description (*available at* https://harusushi.jobs/new-york-ny/haru-server/37058C3C1110422AA97242E30A0EAD1E/job/, *last accessed* November 28, 2017)

18.     Defendants maintained a policy and practice whereby Tipped Employees were not properly compensated "call-in pay" as required by the NYLL.

19.     Plaintiff brings this action on behalf of himself and all similarly situated current and former Tipped Employees who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other similarly situated employees of their lawfully earned wages.

20.     Plaintiff also brings this action on behalf of himself and all similarly situated current and former Tipped Employees pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiff**

**Carlos Primo**

21.     Carlos Primo ("Primo") is an adult individual who is a resident of New York, New York.

22.     Primo was employed by Defendants at the Gramercy Haru from in or around March 2011 through August 2017 as a busser, runner, and server - tipped positions.

23.     Primo was employed by Defendants at the Third Ave. Haru from in or around August 2017 through September 2017 as a server - a tipped position.

24.     Primo is a covered employee within the meaning of the FLSA and the NYLL.

**Defendants**

25.     Defendants have jointly employed Plaintiff and similarly situated employees at all times relevant.

26.     Each Defendant has had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

27.     Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

28.     During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and the NYLL.

**Benihana National Corp.**

29.     Together with the other Defendants, Benihana National Corp. has owned and/or operated the Gramercy Haru and Third Ave. Haru restaurants during the relevant time period.

30.     Benihana National Corp. is a foreign business corporation organized and existing under the laws of Delaware.

31.     Benihana National Corp. owns the Haru restaurants and has been responsible for payroll at the Haru restaurants.[6]

32.     Benihana National Corp. is the corporate identity that has appeared on Plaintiff's paychecks for work performed at the Gramercy Haru and Third Ave. Haru restaurants.

33.     The Division of Corporations filing with the New York State Department of State identifies Benihana National Corp.'s Chief Executive Officer as Thomas Baldwin and its Principal Executive Office at 2150 Biscayne Boulevard, Suite 900, Aventura, Florida 33180.

34.     Benihana National Corp. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

---

[6] **Exhibit A**, Affidavit of Sharon Rose.

35.     At all relevant times, Benihana National Corp. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

36.     Benihana National Corp. applies the same employment policies, practices, and procedures to all Tipped Employees at the Gramercy Haru and Third Ave. Haru restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, and tips.

37.     Upon information and belief, at all relevant times Benihana National Corp. has an annual gross volume of sales in excess of $500,000.

**Haru Holding Corp.**

38.     Together with the other Defendants, Haru Holding Corp. has owned and/or operated the Gramercy Haru and Third Ave. Haru restaurants during the relevant time period.

39.     Haru Holding Corp. is a foreign business corporation organized and existing under the laws of Delaware.

40.     Haru Holding Corp. is listed as a "Principal," on the active New York State Liquor License for the Gramercy Haru and Third Ave. Haru.

41.     The Division of Corporations filing with the New York State Department of State identifies Haru Holding Corp.'s Chief Executive Officer as Thomas Baldwin and its Principal Executive Office at 2150 Biscayne Boulevard, Suite 900, Aventura, Florida 33180.

42.     Haru Holding Corp. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

43.     At all relevant times, Haru Holding Corp. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring,

firing, disciplining, timekeeping, payroll, and other employment practices.

44.     Haru Holding Corp. applies the same employment policies, practices, and procedures to all Tipped Employees at the Gramercy Haru and Third Ave. Haru restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, and tips.

45.     Upon information and belief, at all relevant times Haru Holding Corp. has an annual gross volume of sales in excess of $500,000.

**Haru Gramercy Park Corp.**

46.     Together with the other Defendants, Haru Gramercy Park Corp. has owned and/or operated the Gramercy Haru and Third Ave. Haru restaurants during the relevant time period.

47.     Haru Gramercy Park Corp. is a domestic business corporation organized and existing under the laws of New York.

48.     The Division of Corporations filing with the New York State Department of State identifies Haru Gramercy Park Corp.'s Chief Executive Officer as Thomas Baldwin and its Principal Executive Office at 2150 Biscayne Boulevard, Suite 900, Aventura, Florida 33180.

49.     Haru Gramercy Park Corp. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

50.     At all relevant times, Haru Gramercy Park Corp. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

51.     Haru Gramercy Park Corp. applies the same employment policies, practices, and procedures to all Tipped Employees at the Gramercy Haru and Third Ave. Haru restaurants, including policies, practices, and procedures with respect to payment of minimum wage,

overtime compensation, and tips.

52.    Upon information and belief, at all relevant times Haru Gramercy Park Corp. has an annual gross volume of sales in excess of $500,000.

**Haru Third Ave. Corp.**

53.    Together with the other Defendants, Haru Third Ave. Corp. has owned and/or operated the Gramercy Haru and Third Ave. Haru restaurants during the relevant time period.

54.    Haru Third Ave. Corp. is a domestic business corporation organized and existing under the laws of New York.

55.    The Division of Corporations filing with the New York State Department of State identifies Haru Third Ave. Corp.'s Chief Executive Officer as Thomas Baldwin and its Principal Executive Office at 2150 Biscayne Boulevard, Suite 900, Aventura, Florida 33180.

56.    Haru Third Ave. Corp. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

57.    At all relevant times, Haru Third Ave. Corp. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

58.    Haru Third Ave. Corp. applies the same employment policies, practices, and procedures to all Tipped Employees at the Gramercy Haru and Third Ave. Haru restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, and tips.

59.    Upon information and belief, at all relevant times Haru Third Ave. Corp. has an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

60.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

61.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

62.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

63.     Plaintiff brings the First and Second Causes of Action, FLSA claims, on behalf of himself and all similarly situated persons who work or have worked as Tipped Employees at the Gramercy Haru and Third Ave. Haru restaurants in New York, who elect to opt-in to this action (the "FLSA Collective").

64.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective.

65.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid the full minimum wage rate for all hours worked up to 40 per workweek and premium overtime compensation for all hours worked beyond 40 per workweek.

66.     All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

67.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective.

- 10 -

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings the Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as Tipped Employees at the Gramercy Haru and Third Ave. Haru restaurants in New York between December 6, 2011 and the date of final judgment in this matter (the "Rule 23 Class").

69.     The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

70.     There are more than fifty Rule 23 Class Members.

71.     Plaintiff's claims are typical of those claims that could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

72.     Plaintiff and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

73.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interests antagonistic to the Rule 23 Class Members.

74.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

75.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

76.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class Members individually and include, but are not limited to, the following:

(a)  whether Defendants failed to pay Plaintiff and the Rule 23 Class full minimum wages for all of the hours they worked up to 40 hours per workweek;

(b)  whether Defendants correctly compensated Plaintiff and the Rule 23 Class at time and one half the full minimum wage for hours worked in excess of 40 per workweek;

(c)  whether Defendants misappropriated tips from Plaintiff and the Rule 23 Class by distributing tips to tip ineligible positions, such as sushi chefs;

(d)  whether Defendants failed to pay Plaintiff and the Rule 23 Class call-in pay as required by the NYLL;

(e)  whether Defendants failed to furnish Plaintiff and the Rule 23 Class with proper annual wage notices, as required by the NYLL; and

(f)  whether Defendants failed to furnish Plaintiff and the Rule 23 Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

77.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Carlos Primo**

78.     During his employment, Primo generally worked the following scheduled hours unless he missed time for vacation, sick days and/or holidays:

- Approximately 5 shifts per week, consisting of dinner shifts, lunch shifts and two double shifts per week. Shifts lasted from approximately 10:30 a.m. until 3:00 or 4:00 p.m., 4:00 p.m. until 12:30 a.m.  Approximately 52 hours per week.

79.     Throughout his employment, Defendants applied a tip credit towards the minimum wage rate paid to Primo for work performed as a busser, runner, and server. Defendants failed to notify Primo in writing of the tip credit provisions of the NYLL, or of their intent to apply a tip credit to his wages.

80.     Defendants have suffered or permitted Primo to perform non-tip producing side work for more than 20% and/or 2 hours on a consistent basis, including pre-shift side work, running side work, and closing side work.  These duties included, but are not limited to: (1) cleaning bathrooms; (2) sweeping; (3) mopping; (4) setting up and taking out garbage cans; (5) washing, cleaning and filling soy sauce containers; (6) putting various sauces into squeeze bottles; (7) cleaning the POS station; (8) setting up garnishes; (9) filling large quantities of bowls with scallions and tofu; (10) folding napkins; (11) setting up and breaking down soda machine; (12) restocking and polishing glassware; (13) filling ice; (14) setting up and breaking down the patio; and (15) wrapping up and moving food such as tofu and seaweed to refrigerators.

81.     When Primo worked over 40 hours in a workweek, Defendants failed to calculate his overtime rate at 1.5 times the full minimum wage rate.

82.     Defendants unlawfully required Primo to share tips with employees not entitled to tips under the FLSA and/or the NYLL, including, but not limited to, sushi chefs. In this regard, sushi chefs are tip-ineligible employees because their primary duties do not include directly servicing

customers and they are not ordinarily engaged in personal customer service. Moreover, sushi chefs do not seat customers, do not greet customers, do not take orders, and do not deliver or serve sushi or other food items to customers, even customers sitting at the sushi bar.

83.    Defendants failed to furnish Primo with proper annual wage notices, as required by the NYLL.

84.    Defendants failed to furnish Primo with proper wage statements, listing the rates paid, gross wages, and the claimed tip allowance, as required by the NYLL.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

85.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

86.    At all times relevant, Plaintiff and the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

87.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiff and the FLSA Collective to distribute a portion of their tips to workers who do not "customarily and regularly" receive tips.

88.    Additionally, Defendants also have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiff and the FLSA Collective to perform duties that are unrelated to their tip-producing work.  During these periods, Defendants have compensated Plaintiff and the

FLSA Collective at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

89.     Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiff and the FLSA Collective to perform a substantial amount of non-tip producing "side work" in excess of 20% of their time at work.   During these periods, Defendants have compensated Plaintiff and the FLSA Collective at the tipped minimum wage rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

90.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

91.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

92.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

93. Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

94. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (Brought on behalf of Plaintiff and the Rule 23 Class)

95.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96. At all times relevant, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

97. Defendants have failed to pay Plaintiff and the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

98. Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the Rule 23 Class the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from February 2011 through December 30, 2013; (b) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (d) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; and (e) $11.00 per hour for all hours worked from December 31, 2016 through the present.

99. Defendants have failed to notify Plaintiff and the Rule 23 Class of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

100.    Defendants also required Plaintiff and the Rule 23 Class to perform a substantial amount of non-tipped "side work" in excess of 2 hours or more, or 20% of their work time. During these periods, Plaintiff and the Rule 23 Class were engaged in a non-tipped occupation.

101.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

102.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

103.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class.

104.    Defendants failed to pay Plaintiff and the Rule 23 Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

105.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment

and post-judgment interest.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Tip Misappropriation
### (Brought on behalf of Plaintiff and the Rule 23 Class)

106.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

107.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the Rule 23 Class in violation of NYLL, Article 6, § 196-d, and 12 NYCRR 146-2.14.

108.    Defendants unlawfully required Plaintiff and the Rule 23 Class to share the gratuities they received with employees other than tipped employees, in violation of NYLL Article 6, § 196-d and 12 NYCRR 146-2.14..

109.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants the value of the misappropriated gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Call-In Pay
### (Brought on behalf of Plaintiff and the Rule 23 Class)

110.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

111.    During regularly scheduled shifts, Plaintiff and the Rule 23 Class who reported for duty, whether or not assigned to actual work, were permitted to leave by request or permission of Defendants, and were not compensated for: (1) at least three hours for one shift or the number of hours in the regularly scheduled shift, whichever is less; (2) at least six hours for

two shifts totaling six hours or less, or the number of hours in the regularly scheduled shift, whichever is less; and (3) at least eight hours for three shifts totaling eight hours or less or the number of hours in the regularly scheduled shift, whichever is less, as required by 12 N.Y.C.R.R. Part 137 and Part 146.

112.    Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants up to three hours of wages calculated at their regular or overtime rate of pay, whichever is applicable, as provided for by 12 N.Y.C.R.R. Part 137 and Part 146, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

113.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

114.    Defendants have failed to furnish Plaintiff and the Rule 23 Class with proper annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal

place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

115.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the Rule 23 Class are entitled to statutory penalties of fifty dollars each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with annual wage notices, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198(1-b).

### EIGHTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

116.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

117.    Defendants failed to supply Plaintiff and the Rule 23 Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing:  dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

118.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198 (1-d).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.      That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Tipped Employees who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at the Gramercy Haru and Third Ave. Haru restaurants in New York.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid minimum wages, unpaid overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      Unpaid minimum wages, unpaid overtime compensation, misappropriated tips, call-in pay and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.      Statutory penalties of two hundred fifty dollars for each workday that Defendants

failed to provide Plaintiff and the Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

      H.      Prejudgment and post-judgment interest;

      I.      Reasonable attorneys' fees and costs of the action; and

      J.      Such other relief as this Court shall deem just and proper.

Dated:  New York, New York
       December 6, 2017

Respectfully submitted,

_Brian Schaffer_ (signature)

_____

Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Putative Class*

- 22 -

# EXHIBIT A

## FAIR LABOR STANDARDS ACT CONSENT

1.    I consent to be a party plaintiff in a lawsuit against Haru and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.    By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.



_____
Signature

Carlos Alfredo Primo Boyez
Full Legal Name (Print)